Curia, per Butler, J.
The sheriff has tendered to the defendant, the purchaser at his sale, a deed of conveyance, with the following description of the premises alleged to have been sold, “ bounded on the East by Meeting street, and South by the Theatre, and North by land of John "White.” The defendant refused to accept the deed, mainly on the ground that he bought, or supposed himself to have bought, a different lot from that described; or in other words, that he ought not to be bound by the terms of a sale which had been effected by mistake and surprise. To relieve himself from the obligation to abide by the terms of the sale, he took, on the trial, several legal grounds, to wit: that the entry in the sheriff’s book was not, in itself, nor by reference to the written entries of levy *376 on the execution, a sufficient compliance with the requisition of the statute of Frauds, under which sheriff’s sales must be regulated. It has been ruled, in the case of Christie vs. Simpson, 1 Rich. 407, that an entry in the sheriff’s book, whether made by the deputy or sheriff himself, must be taken to be regular, until the contrary appear; and that a sheriff’s sale of lands under an execution, is within the Statute of Frauds, and that without a proper entry or memorandum in writing, the purchaser will not be bound.
The question in this case, then, opcurs, was the entry in the sheriff’s book sufficient to bind the purchaser ? These are the words of the entry, “ house and lot of John White, at the suit of Russell & Hall, sold to T. N. Gadsden for 1000 dollars.” This entry is evidently made in reference to the levy under which the sale had been advertised. The entry of the levy, as sworn to, was as follows : “levied on John White’s house and lot in Meeting street, the defendant in the execution.” Besides this, there is another entry on the execution, but not sworn to. If that can be referred to, it would make the other entries sufficiently full and descriptive to point out the premises that were, in fact, sold by the sheriff. That appears to have been a memorandum made by the deputy sheriff, before he made the one that was sworn to. Can it be regarded as forming any part of the levy? This makes it necessary to say what is a levy, as it is termed, of land, under a fi. fa. Land cannot be offered for sale by the sheriff, by actual exposure and exhibition of the identical parcel set apart for sale under the execution. In this respect it is not like a levy on a personal chattel, which, by virtue of an actual seizure, is always exposed to the view of the purchaser, The word levy, is not, technically speaking, applicable to the salo of land. To levy on land, in the more enlarged view of the law, is to subject it, by the act of the sheriff, to sale under a writ of fieri fa-cias. To do so effectually, the sheriff or his deputy must have an actual knowledge of the land which he condemns, or sets apart for sale. Its identity must depend on his knowledge, so that he could point it out with certainty.
*377 This might be sufficient, so far as it regards itself; but as others are concerned, especially the defendant, and sometimes a purchaser, he must do more. He must make some descriptive indorsement on the execution, to shew what land has been levied on. Frequently, he cannot'do more than give a very general description of the premises, as to their location and extent; for he may not know, and in most cases could not know, the actual boundaries, more especially of wild lands, or those of extensive limits. His indorsement ought to be such as to give reasonable notice of his purpose to sell, and what, in fact, will be offered for sale. A levy, therefore, must consist of description, usually to be found on the execution at the time of sale. There are cases, however, in which a sheriff would be allowed to amend, and in that way to enlarge, the description of the levy; in other words, to reduce to writing an account of what he had done, in fact, in reference to the levy. In the case before us, the execution contains a memorandum purporting to have been made before the one that was sworn to. It is but descriptive of what the sheriff had done, in subjecting the defendant’s land to sale under the fi. fa. and I think may well be referred to as a part of the levy. It is as follows: “Levied on this day, the defendant’s house and lot, situate in Meeting street, next to the theatre. 9th Feb’y. 1843.” The sworn return is dated the same day. Taking all the entries together, they would stand thus : that in the case of Russell & Hall against White, the sheriff did levy upon the defendant’s house and lot situate in Meeting street, next to the new theatre, and did sell the same at sheriff’s sale, on the 6th day of March, 1843, (the day entered in the books) at which sale Thomas N. Gadsden bid off the premises at $1000. The memorandum thus written out, according to its true tenor, would be a sufficient compliance with the Statute of Frauds, to bind the purchaser for some house and lot in Meeting street, near the Theatre. If there had been but one house, I take it for granted the sale would have been good, without any difficulty. There is no patent ambiguity in the description, either in the entry in the book, or in the deed. The fact that there are two sepa *378 rate houses to which the description may apply, appears by evidence aliunde. That has been made to appear by parol. Then the question is, may it not be explained by parol? If White had, by his will, devised this house in the same terms, and there had been a question to which the description referred, it would have presented the case of a latent ambiguity; and being raised by parol, could be explained in the same way. This, however, would not settle the main question which is now before us. The difficulty arises from the allegation on the part of the defendant, that he bought one lot, or thought he bought one lot, while the sheriff tendered to him a deed for another; and that he has been deceived by the proceedings under which the sheriff conducted the sale. This is a question which brings up the real merits of the case. Was the purchaser deceived or mistaken, as to the land which was set down to him on his bid? If he was, and he can make it appear that his mistake arose from fallacious or deceptive representations of the sheriff, he ought not to be bound by the purchase. Under such circumstances, fraud, mistake, or surprise, would be let in evidence as a defence, but under no other; Sug. on Vend. 104. The representations or proceedings of the sheriff should have been such as to deceive a man of ordinary prudence and vigilance. It seems to me that the written description of the land would afford important information on this branch of the case. The advertisement of the sheriff was notice to the purchaser, and may be very explicit in its description of the premises; or it may be still more vague than the levy. It was excluded from the jury by the presiding Judge, and has not been brought to our view. . From the views which I have taken of the case, I think it was competent evidence, either to explain the latent ambiguity complained of, or to shew that the purchaser had no cause to complain from mistake or deception. How far it might have influenced the decision of the jury that tried the case, or what influence it may have on the verdict of another jury, we cannot tell. If the purchaser was deceived, or fairly mistaken by any fault of description, he should be relieved *379 from the terms of his sale; but if he was not, or under the circumstances should not have been, he must stand'to it.
Motion for new trial granted.
Richardson, O’Neall and Wardlaw, JJ. concurred.